IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CAROLYN J. HUMPHREY,

                                       OPINION AND ORDER

        Plaintiff,

                                       3:07-cv-00120-bbc

    v.

VT GRIFFIN SERVICES,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

       While plaintiff Carolyn Humphrey was on medical leave from her job with defendant VT Griffin Services, her department was assigned a new manager, who began making a number of changes. When plaintiff returned, she discovered that she had lost a recent promotion and pay increase. Plaintiff says that her new manager "screamed" at her for little or no reason, gave her "the dirtiest looks" and referred to the department as "the Golden Girls" in an effort to make plaintiff feel excluded because she was Puerto Rican. A few months later plaintiff decided she couldn't take it anymore and she quit.

       Plaintiff brings this case under Title VII of the Civil Rights Act, contending that she was demoted, subjected to a hostile work environment and constructively discharged because of her national origin and because she reported a coworker's sexual harassment. Defendant's

1

motion for summary judgment is ripe for review. Unfortunately for plaintiff, she has not adduced sufficient evidence to permit a reasonable jury to find that any mistreatment she suffered was on account of her national origin or conduct protected by Title VII. Defendant's motion for summary judgment must be granted.

The undisputed facts are set forth below and are taken from the parties' proposed findings of fact. Plaintiff did not file a response to defendant's proposed findings of fact. Therefore, unless plaintiff's own proposed findings of fact contradicted defendant's, I treated defendant's proposed findings as undisputed. Procedure to be Followed on Motions for Summary Judgment II.C., attached to Preliminary Pretrial Conference Order, dkt. #6 (June 20, 2007).

## UNDISPUTED FACTS

Defendant VT Griffin Services describes its business as providing "professional and technical support services and job order contracting." Defendant administers a contract with the federal government "to provide all management and services necessary to perform Directorate of Support Services operations for the U.S. Army based at Fort McCoy located outside Sparta, Wisconsin."

Defendant hired plaintiff Carolyn Humphrey as a secretary in December 2002. After starting in the engineering department at Fort McCoy, plaintiff soon moved to human

2

resources. She was responsible for new hire orientation, benefits and recruiting. She was paid hourly and the position was not exempt from the Fair Labor Standards Act.

In September 2004, plaintiff received the award for employee of the month. At the end of the year plaintiff's supervisors Lucy Czarnik and Richard Stokes evaluated plaintiff's performance and gave her an overall rating of "very good." Regarding plaintiff's interaction with customers, they wrote that she had "exceeded the goal of customer service." Plaintiff had received no "negative appraisals" or "reprimands" up until that time.

In early 2005, plaintiff reported to Stokes that a manager was sexually harassing Carolyn Van Kirk, a secretary. (Neither party provides additional details about that report.) In response, Stokes verbally reprimanded the manager and instructed all managers not to "fraternize" with employees. Later, both Van Kirk and the manager were disciplined for engaging in a "consensual affair." The manager received a suspension; Van Kirk received a warning.

On March 14, 2005, Stokes promoted plaintiff to a position called "Recruiter/Benefits Coordinator," a position that Stokes created for her. Her salary changed from an hourly rate of $17.96 to a salary of $46,000. (The parties dispute whether plaintiff's position included new duties, such as making recommendations for personnel decisions.) The following day, defendant asked Stokes to resign. (Neither party says why.)

Plaintiff took medical leave on March 24. While plaintiff was gone, Mary Norman

became the human resources manager. Norman reviewed plaintiff's new position and concluded that it had been incorrectly characterized as exempt from the requirements of the Fair Labor Standards Act because plaintiff's duties were clerical in nature. As a result, plaintiff's immediate supervisor, George Harvey, reclassified plaintiff's position as hourly and nonexempt from the FLSA.

Plaintiff's coworkers in the human resources department were Lucy Czarnik, Carolyn Van Kirk and Tammy Erickson. Each is white except plaintiff, who is Puerto Rican. Norman demoted Czarnik from human resources manager to secretary. (Plaintiff says that despite the formal demotion, Czarnik kept the same pay and title, but the deposition testimony she cites in support of that view is not in the record.)

When plaintiff returned from medical leave on May 2, she discovered that Norman had removed plaintiff's scanner and printer from her office. Norman said that employees had a negative perception of the human resources department and that she "had received many complaints" about plaintiff. However, Norman gave plaintiff only one name.

On May 9, plaintiff sent an email to the vice president of operations, complaining that she had been "stripped of [her] job title," lost "most of [her] job duties" and given "a $400.00 a month pay cut." The same day, Norman reprimanded plaintiff because she had asked another manager to hire her boyfriend's daughter for a summer position and had violated defendant's confidentiality procedures by informing that same manager that another

4

employee had applied for an internal position. (The parties dispute whether Norman told plaintiff, "next time don't jump the chain of command.")

In late May or early June, another manager reported to Norman that plaintiff had given him an application for a summer position from her boyfriend's daughter. As a result, Norman gave plaintiff a written warning for continuing to make attempts to "solicit interest in her boyfriend's daughter's application."

In May and June, Norman reprimanded plaintiff for the following:

• failing to tell Norman that plaintiff had given information to a family member of an employee who had died. (Neither party explains this incident in greater detail. Plaintiff says that Norman "blew up" at her but she does not say what she means by that.);

• opening a piece of mail that was addressed to plaintiff but Norman believed was intended for her (Norman). (The parties dispute whether Norman "screamed" at plaintiff for doing this.);

• telling another employee that he could not add a child to his insurance until the open enrollment period; plaintiff was correct that the employee had to wait and Norman later acknowledged that. (The parties dispute whether Norman asked plaintiff "How dare you?" and "yell[ed] at the top of her lungs.");

• improperly completing I-9 forms. (The parties dispute whether Norman "yelled at" plaintiff).

5

(The parties dispute whether Norman referred to the human resources department as "the new Golden Girls of VT Griffin," whether Norman "talk[ed]" and "giggle[d] with her coworkers but not plaintiff and whether Norman gave plaintiff "the dirtiest looks.")

On June 28, plaintiff complained to Harvey that Norman was harassing her by giving her "dirty looks," "yell[ing] at her" and "treat[ing] her in a demeaning manner." Plaintiff asked for a transfer to another department. On July 1, plaintiff took medical leave.

Harvey appointed Marci Martin, a supervisor from another department, to conduct an investigation of plaintiff's allegations. She concluded that Norman had not violated defendant's harassment policy. After reviewing Martin's report, Harvey denied plaintiff's request for a transfer and told her that she should return to work by July 18. Plaintiff told Harvey that she was not coming back to work because working in the human resources department "made her anxious."

Carolyn Van Kirk was terminated in 2005. Tammy Erickson was transferred from the human resources department in August 2006. She was demoted with a loss in pay, but Norman disagreed with that decision.

## OPINION

To defeat defendant's motion for summary judgment, plaintiff was required to adduce evidence that would allow a reasonable jury to infer that defendant demoted her and

6

subjected her to a hostile work environment because of her national origin or because she reported conduct that is protected by Title VII.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  Plaintiff failed to do this.

With respect to her national origin, the only piece of evidence adduced by plaintiff was Norman's alleged use of the term "Golden Girls."  Plaintiff's argument about this term is that when Norman said "golden," she really meant "blond" and that she used the term on purpose to convey a message that plaintiff did not belong in the group because she was Puerto Rican.  Unfortunately for plaintiff, she has nothing to back this up other than her own subjective beliefs, which are not enough.  Sanderson v. Henderson, 188 F.3d 740, 746 (7th Cir. 1999).  (Plaintiff submitted an affidavit of a coworker who agreed with her interpretation of the remark, but this opinion is no less subjective than plaintiff's.)  On its face, a term like "Golden Girls" does not convey any discriminatory animus.  To the extent it is suggestive at all, it is much less so than many other remarks that the court of appeals has found to be insufficient to support a claim for discrimination. E.g., Ptasznik v. St. Joseph Hospital, 464 F.3d 691, 695 -96 (7th Cir. 2006) (statements by supervisor that plaintiff was "too Polish" and "too old" were insufficient to prove Title VII and ADEA claims); Steinhauer v. DeGolier,  359 F.3d 481, 487 (7th Cir. 2004) (female supervisor's use of term "good old boys' club" did not support male's discrimination claim because "there is nothing inherently anti-male about [the] phras[e]"). See also Mlynczak v. Bodman, 442 F.3d 1050, 1058 (7th

7

Cir. 2006) (remark that did not refer to plaintiff's race or gender was "too conjectural to serve as evidence of race or gender discrimination"). The inferences needed to connect "Golden Girls" with discrimination are too numerous and speculative to defeat defendant's motion for summary judgment.

Plaintiff also points to what she viewed as the unfairly harsh treatment that she received from Norman. This line of argument is unhelpful because plaintiff does not dispute that there was a legitimate reason for demoting her (because plaintiff's position had been illegally classified) or that each of Norman's reprimands had a basis in fact. Although Norman may have been a difficult boss, Title VII does not prohibit bosses from being mean, only discriminatory.

If plaintiff could show that Norman was treating her differently from similarly situated employees outside plaintiff's protected class, that would be evidence of discrimination. Humphries v. CBOCS West, Inc., 474 F.3d 387, 404-05 (7th Cir. 2007). But plaintiff adduces almost no evidence about the treatment of her coworkers. Even if Norman "screamed" and "yelled" at plaintiff with little provocation, this means nothing for plaintiff's case if Norman "screamed" and "yelled" at everyone else as well. The record is silent on this question, which is a problem for plaintiff because it is she and not defendant who has the burden to prove her case. Hammel v. Eau Galle Cheese Factory, 407 F.3d 852, 859 (7th Cir. 2005).

8

Plaintiff says that two of her coworkers continued to work in the human resources department after she left, but what does that reveal? Plaintiff was not fired or asked to resign. Thus, her coworkers could have been enduring the same treatment as plaintiff but decided to stick it out. A jury would be forced to guess why plaintiff left and they did not. (And each of her coworkers did leave the department eventually; all had left within a year after plaintiff.)

The only evidence suggesting differential treatment is plaintiff's testimony that Norman "talked" and "giggled" with her coworkers but gave her "dirty looks." But a look is simply too slender a reed to support a claim for discrimination or harassment. By its nature a look is ambiguous: plaintiff gives no reason to believe that the looks were motivated by her national origin. Further, although the looks may have been unpleasant for plaintiff, she points to no authority holding that facial expressions and yelling and screaming (without using epithets) are enough to create a hostile work environment under Title VII. Luckie v. Ameritech Corp., 389 F.3d 708, 713 (7th Cir. 2004) (no racially hostile work environment by calling employee "dunce," criticizing his performance and supervisor saying that she wanted to "change the complexion" of department); cf. Breneisen v. Motorola, Inc., No. 05-2032, – F.3d – , 2008 WL 126034, *7 (7th Cir. Jan. 15, 2008) (verbal reprimand not sufficiently adverse to change terms and conditions of employment). In fact, plaintiff cites no case law supporting a view that any of her claims should survive summary judgment.

9

Plaintiff's evidence is also sparse with respect to her retaliation claim. To begin with, the record is far from clear whether plaintiff was engaging in protected conduct. Title VII's retaliation provision protects an employee who complains about conduct that reasonably could be perceived as violating the statute. Fine v. Ryan International Airlines, 305 F.3d 746, 752 (7th Cir. 2002). It is impossible to make this determination with respect to plaintiff's conduct because she proposes no facts about the conduct she reported. The facts show only that she reported sexual harassment of coworker Van Kirk. But Van Kirk was later disciplined for having a consensual affair with a manager. Plaintiff adduces no evidence to suggest Van Kirk was being sexually harassed in fact or that plaintiff reasonably believed she was.

In any event, plaintiff's only evidence of retaliation is that both she and Van Kirk were disciplined shortly after plaintiff complained. This evidence cannot carry the day for plaintiff. The court of appeals has held repeatedly that a plaintiff cannot prove a retaliation case through temporal proximity alone. Burks v. Wisconsin Department of Transportation, 464 F.3d 744, 758-59 (7th Cir. 2006); Sauzek v. Exxon Coal USA, Inc., 202 F.3d 913, 918 (7th Cir. 2000). In this case in particular, the closeness in time between plaintiff's allegation of sexual harassment and alleged mistreatment lacks probative value. Plaintiff points to no evidence that Norman was even aware that she was involved in a sexual harassment investigation, much less that Norman was opposed to plaintiff's involvement in such an

10

investigation. This is fatal to plaintiff's claim. Morfin v. City of East Chicago, 349 F.3d 989, 1005 (7th Cir.2003) ("The protected conduct cannot be proven to motivate retaliation if there is no evidence that the defendants knew of the protected activity.") Also, the facts do not show that Norman had anything to do with Van Kirk's termination, making any comparison between plaintiff's and Van Kirk's treatment unenlightening.

Plaintiff emphasizes that Norman stepped up her criticism after plaintiff complained to one of the vice presidents about her demotion. This is a red herring because that complaint was not protected by Title VII. Although plaintiff made it clear in that complaint that she was unhappy with her current situation, she included no allegation that she was being discriminated against because of her national origin. Thus, to the extent Norman mistreated plaintiff because of that complaint, it cuts against her claim rather than supports it.

Plaintiff's treatment by defendant may have been insensitive, unpleasant and even unfair. But plaintiff has not shown that defendant violated Title VII or that a reasonable jury could find that it did. Defendant's motion for summary judgment must be granted.

ORDER

IT IS ORDERED that the motion for summary judgment filed by defendant VT Griffin Services is GRANTED. The clerk of court is directed to enter judgment in favor of

11

defendant and close this case.

    Entered this 11th day of February, 2008.

                                  BY THE COURT:
                                  /s/
                                  BARBARA B. CRABB
                                  District Judge